UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MUHAMMAD FARID EDWARDS, et al.,

    Defendants.

Case No. 2:12-cv-1060
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings

(1) a motion for summary judgment (ECF No. 54) and a memorandum in support (ECF No. 55) filed by Plaintiff, the United States of America; a memorandum in opposition (ECF No. 62) filed by Defendant Dr. Mohammed Farid Edwards; a memorandum in opposition (ECF No. 63) filed by Defendant I.S.M.B.A., Inc.; and reply memoranda (ECF Nos. 65, 66) filed by Plaintiff;

(2) a motion for partial summary judgment (ECF No. 56) filed by Defendant I.S.M.B.A., Inc.; a memorandum in opposition (ECF No. 61) filed by Plaintiff; and a reply memorandum (ECF No. 64) filed by Defendant I.S.M.B.A., Inc.; and

(3) a motion for summary judgment (ECF No. 57) filed by Defendant Dr. Mohammed Farid Edwards; a memorandum in opposition (ECF No. 60) filed by Plaintiff; and a reply memorandum (ECF No. 70) filed by Defendant Dr. Mohammed Farid Edwards.

For the reasons that follow, the Court **GRANTS** Plaintiff's motion for summary judgment (ECF No. 54), **DENIES** Defendant I.S.M.B.A., Inc.'s motion for partial summary judgment (ECF No. 56), and **DENIES** Defendant Dr. Mohammed Farid Edwards' motion for summary judgment (ECF No. 57).

1

## I. Background

Since October 1978, Defendant Dr. Mohammed Farid Edwards has owned property located at 5942 Headley Road in Gahanna, Ohio.[1] Because Edwards and his deceased wife had a problem paying their taxes over the years, they accrued tax debts.[2] In December 1999, the Internal Revenue Service ("IRS") assessed $473,359 in unpaid federal income tax against the Edwardses for tax year 1998. Including statutory accruals, the unpaid 1998 tax liability is now $703,444.26. In July 2000, the IRS assessed $44,311 in unpaid federal income tax against the Edwardses for tax year 1999. Including statutory accruals, the unpaid 1999 tax liability is now $80,212.53. Finally, in November 2009, the IRS assessed $145,802 in unpaid federal income tax against the Edwardses for tax year 2008. The IRS then assessed an additional $32,016 in unpaid federal income tax against the Edwardses for that same year in May 2012. Including statutory accruals, the 2008 unpaid tax liability is now $60,352.34.[3]

---

[1] The evidence before this Court indicates a number of transactions since 1978 involving portions of the property. Because none of these transactions matter to the issues before the Court, they are not described here. The parties agree that Edwards fully owns the Headley Road property.

[2] Edwards' wife, Margaret Edwards, passed away in February 2010. She is one of three originally named defendants dropped from this lawsuit via Federal Rule of Civil Procedure 21 on May 27, 2014. (ECF No. 69.)

[3] Two comments are necessary. First, the unpaid tax balances provided are as of September 3, 2012. Second, the evidence before this Court indicates that, in May 2011, the IRS assessed $42,392 in unpaid federal income tax against the Edwardses for tax year 2010. The IRS then assessed an additional $6,356 in unpaid federal income tax against the Edwardses for that same year in May 2012. Including statutory accruals, the unpaid 2010 tax liability is now $4,613.24. Pursuant to the complaint, Plaintiff seeks to collect on the tax liens for the debts owed for 1998, 1999, 2008, and 2010 via Counts I and II (ECF No. 1 ¶¶ 15, 17) and to enforce against the property the tax liens owed for 1998, 1999, and 2008 via Count III (ECF No. 1 ¶¶ 27-31).

Plaintiff, the United States of America, wants its money.[4]  Accordingly, a delegate of the Secretary of Treasury filed (1) a tax lien for the 1998 tax liability in April 2002 and again in March 2009, (2) a tax lien for the 1999 tax liability in July 2000 and again in November 2009, and (3) a tax lien for the 2008 tax liability in December 2009.  In November 2012, Plaintiff then brought the instant action, seeking to enforce its federal tax liens and foreclose on the Headley Road property.  (ECF No. 1.)  Plaintiff and Edwards have each filed a motion for summary judgment (ECF Nos. 54, 57), and a party claiming an interest in the Headley Road property, Defendant I.S.M.B.A., Inc. ("I.S.M.B.A."), has filed a motion for partial summary judgment (ECF No. 56).[5]  The parties have completed briefing on the three motions, which are ripe for decision.

## II. Discussion

### A. Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.

---

[4] Plaintiff has received a portion of the taxes due.  For example, the Edwardses paid their 2006 tax liability in full, and Plaintiff indicates in its briefing that it does not seek judgment on the 2006 tax liability.  (ECF No. 55, at Page ID # 420.)

[5] Plaintiff has named additional defendants as parties with or possibly claiming an interest in the Headley Road property.  The Court will address five of these remaining defendants in a subsequent order that addresses Plaintiff's pending motion for default judgment.  (ECF No. 77.)

*See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

The Sixth Circuit has previously explained the legal context in which tax liens cases such as the instant case exist:

> The federal tax lien arises when unpaid taxes are assessed and continues until the resulting liability is either satisfied or becomes unenforceable through lapse of time.  26 U.S.C. § 6322.  Congress provided for the tax lien in 26 U.S.C. § 6321:
>
>> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any . . . additional amount, [or] addition to tax . . .) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
>
> One effect of a tax lien is that a third party possessing property or rights to property belonging to a taxpayer holds such property subject to the lien, unless the

4

> third party has a prior lien or comes within one of the exceptions listed in 26 U.S.C. § 6323. Where several notices of tax lien have been filed as unpaid taxes accumulate, the priority of each lien relates back to the date of the first notice. 26 U.S.C. § 6321; *Peterson v. United States*, 511 F. Supp. 250, 256-57 (D. Utah 1981). . . .
>
> The government possesses multiple options for actually collecting unpaid taxes. One method is to levy "upon all property and rights to property ... belonging to [the taxpayer] or on which there is a lien . . .." 26 U.S.C. § 6331(a). The levy extends only to the taxpayer's property that is possessed at the time of service. 26 U.S.C. § 6331(b). The person holding such property must surrender it to the government upon demand, subject to an exception not relevant here. 26 U.S.C. § 6332.
>
> A second method available to the government is to bring a lien foreclosure suit pursuant to 26 U.S.C. § 7403. Although a tax lien must exist in order to initiate such an action, the government need not have levied. *Id.* If property to which a tax lien has attached is held by a third party who also possesses a lien, the issue then becomes one of lien priority. Federal law controls priority disputes. *See, e.g., Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955).

*United States v. Bank of Celina*, 721 F.2d 163, 166 (6th Cir. 1983). *See also United States v. Barczyk*, 434 F. App'x 488, 490-91 (6th Cir. 2011).

Against this backdrop, the briefing presents two core issues in dispute. First, there is an argument over the validity of the assessment for tax year 1998 and whether it can serve as a basis for the foreclosure Plaintiff seeks or be reduced to a judgment. Second, there is a dispute over whether I.S.M.B.S. owns a mortgage on the Headley Road property that takes priority over the tax liens. This Court concludes that Plaintiff prevails on both issues.

As noted, the assessment against Edwards for tax year 1998 was for $473,359 (which has since grown due to penalties and interest). This amount arose from a series of transactions involving Edwards' pension trust. He asserts that the assessment is incorrect because income he

5

received in 1998 from the pension trust transactions was discharge of indebtedness income received when he was sufficiently insolvent, which means that it should have been excluded from his gross income and that the assessment was based on a flawed premise.

      Plaintiff points out, however, that the assessment was based on treating prohibited trust transactions as distributions subject to excise taxes.  The IRS assessed these excise taxes based on Edwards' 1998 income tax return and a Form 5330 written representation made and signed by Edwards that he was a disqualified person unable to engage in the trust transactions and would therefore claim the outstanding loan balance as income in tax year 1998.  Edwards then reported $1,011,060 as a pension distribution for 1998, with a lesser amount of that sum being taxable.  Consequently, the IRS levied no additional excise tax against Edwards and did not pursue the 100 percent penalty available under 26 U.S.C. § 4975(b).  Pursuant to 26 U.S.S. § 6501, the statute of limitations period on the 1998 tax period has since expired, which means that the IRS could not go back and assess taxes on the income and impose an excise tax.  Thus, Plaintiff argues, Edwards is now estopped from treating the trust transactions as discharge of indebtedness income as opposed to distributions.

      This Court agrees with Plaintiff.  Even if there were an error in regard to the 1998 assessment, Edwards induced the error and is now estopped from belatedly pursuing a "correction."  The IRS made implicit concessions in regard to the 1998 transactions by electing to forego pursuing avenues that would likely have proved far more expensive for the Edwardses, based in part on their representation that they would treat the trust proceeds as distributions. They are properly held to that representation, which was not a  mutual mistake of law subject to subsequent correction regardless of a limitations period (even if Edwards now characterizes his

own reporting as an error), but was essentially a strategic concession to bring Edwards' 1998 tax problems to an end. If this Court were to conclude otherwise and permit Edwards to evade requisite consistency and backtrack on his representation, then the IRS will have been detrimentally misled by what Plaintiff accurately characterizes as Edwards' gamesmanship. Accordingly, application of Edwards' duty of consistency warrants estoppel, which means that Edwards is stuck with his distribution representation. *See Elbo Coals, Inc. v. United States*, 763 F.2d 818, 820-21 (6th Cir. 1985); *see also Crosley Corp. v. United States*, 229 F.2d 376, 380-81 (6th Cir. 1956). The assessment of the 1998 tax year stands, and the liens involved in this case are valid and enforceable.[6]

Plaintiff similarly prevails on whether I.S.M.B.A. has a lien on the Headley Road property that takes priority over the tax liens. The analytic steps to this conclusion begin with recognition that various mortgages led to Huntington National Bank recording an $805,000 mortgage on the Headley Road property on November 20, 1990. Two years later, when the bank was suing the financially troubled Edwards, one of his brothers, Hanief Edwards, formed the Ohio entity I.S.M.B.A., which he explained stands for "I Saved My Brother's Ass." (ECF No. 59, at Page ID # 672.) Another brother, Mustapha Edwards, funded I.S.M.B.A. Acting as

---

[6] Plaintiff has produced the applicable certificates of assessments and payments. *See* ECF Nos. 55-2 (1998), 55-3 (1999), 55-4 (2008), 55-5 (2010). These certificates established the presumed validity of those liens that were recorded. *See Gentry v. United States*, 962 F.2d 555, 557-58 (6th Cir. 1992). In his briefing, Edwards then challenges only one of these assessments, the 1998 assessment. His failure to puncture that assessment and his silence as to the other assessments involved in this case conclusively establishes the validity of the assessments. As another judicial officer in a sister district has noted, "[a]n assessment of tax by the IRS is presumptively correct. In order to overcome the presumption of correctness, the taxpayer bears the burden of proving by a preponderance of the evidence that, in fact, the assessment is incorrect." *United States v. Hawthorne*, No. 1:12 CV 3041, 2014 WL 2212939, at *2 (N.D. Ohio May 28, 2014) (citations omitted).

I.S.M.B.A.'s President, Hanief Edwards had I.S.M.B.A. pay $150,956.69 to Huntington National Bank to obtain an assignment from the bank of the relevant notes (and therefore the mortgage). I.S.M.B.A. never recorded the assignment in accordance with a confidentiality provision in the agreement. The evidence is imprecise but suggests that, following this assignment, Edwards might have made "about" five mortgage payments and several interest payments to I.S.M.B.A., but none since 1995. (ECF No. 59, at Page ID # 667-70.) In light of these circumstances, Edwards and I.S.M.B.A. both argue that I.S.M.B.A. has a first priority lien on the Headley Road property.

Plaintiff argues, however, that it is entitled to enforce its lien and take first priority on the judicial sale proceeds because I.S.M.B.A. is the nominee of Edwards. In making this argument, Plaintiff reasons that although Ohio law does not explicitly recognize a nominee theory of ownership, it does recognize equitable ownership, which Plaintiff posits is akin to nominee ownership. The problem with this reasoning and the authority from which it is derived is discussed best in United *States v. Toler*, 666 F. Supp. 2d 872 (S.D. Ohio 2009).

In *Toler*, another judicial officer within this District summarized the relevant state law and related jurisprudence and concluded that "nominee theory is not recognized under Ohio law." *Id.* at 883. Although lengthy, the actually concise discussion provided in *Toler* correctly addresses and refutes the authorities and overarching premise upon which Plaintiff relies:

> [T]he Court turns to whether the nominee theory of recovery is applicable under Ohio law. Nominee theory allows a creditor to recover from a debtor where there seems to be a relationship between a debtor and an asset such that there is a concealed understanding between the debtor and the nominal owner that one is holding legal title for the other. As set forth below, this Court finds nominee theory is not recognized under Ohio law.

8

The United States relies upon *Nantucket Vill. Dev. Co. v. United States*, No. 5:99 CV 230, 2001 WL 169316, 2001 U.S. Dist. LEXIS 1064 (N.D. Ohio Jan. 9, 2001) and *United States v. Gaumer*, No. 4:07 CV 1352, 2007 WL 4365399 (N.D. Ohio Dec. 10, 2007) to support its argument that Ohio recognizes nominee theory. In *Nantucket Village*, the Northern District of Ohio, acknowledging the split among Ohio district courts, surveyed the approach that various federal courts have taken in analyzing nominee doctrine. The court did not cite to any Ohio state cases that acknowledge nominee theory, but determined that "the United States may bring a cause of action under the nominee doctrine." *Nantucket Vill.* at *8, 2001 U.S. Dist. LEXIS 1064 at *26. The court then went on to say that "it is clear that Ohio law recognizes the concept of equitable ownership, despite the fact that the term 'nominee doctrine' is not used." *Id.* at *9, 2001 U.S. Dist. LEXIS 1064 at *27. To explain the concept of equitable ownership, the court cited to *Flint v. Holbrook*, 80 Ohio App.3d 21, 608 N.E.2d 809 (1992). In *Flint v. Holbrook*, the court dealt with a land contract, where the vendee of the land occupied and controlled the land but had not completed payments on the land. There, the court found that the vendor, who was to retain legal title to the land as security until the vendee had completed payments, held bare legal title, and that the vendee was the equitable owner. *Id.* at 27, 608 N.E.2d 809. This concept of equitable ownership is different from that of nominee doctrine. In the case of equitable ownership, the person or entity holding bare legal title is not doing so in an attempt to conceal the true equitable owner, but rather is doing so as security for a payment. *See also Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24, 484 N.E.2d 186 (1984). This Court finds, therefore, that equitable ownership is not synonymous with nominee doctrine.

In *Gaumer*, 2007 WL 4365399, the court relied on *Nantucket Village* and *Flint*, and stated "although Ohio law does not explicitly recognize 'nominee theory' of ownership, it does recognize 'equitable ownership,' which is akin to 'nominee theory.'" *Id.* at *3. The court identified the factors used to evaluate nominee theory. *See Spotts v. United States*, 429 F.3d 248, 248 n.2 (6th Cir. 2005) (setting forth nominee theory factors). In *Spotts*, the Sixth Circuit remanded the case to district court to determine whether the appellant, under Kentucky law, held an interest in the property at issue as a nominee pursuant to the holding in *Drye*. *Id.* at 253. Although the Sixth Circuit required the district court to evaluate nominee theory under Kentucky law, in footnote 2 of *Spotts*, the court noted six factors that other federal courts have used in evaluating nominee questions. *Id.* at 248, 248 n.2. The *Spotts* court did not find that Kentucky law uses those factors, and certainly did not answer the question of whether Ohio law recognizes nominee theory and incorporates those factors. The court in *Gaumer* relied on the *Spotts* factors and the analysis in *Nantucket Village*, but did not cite to any Ohio cases that found nominee theory under Ohio law. *Gaumer*, 2007 WL 4365399 at *3.

9

> In *Kaiser v. Stedman*, No. C:2–95–1074, 84 A.F.T.R.2d 99–6196, 1999 U.S. Dist. LEXIS 15327 (S.D. Ohio Sept. 9, 1999), the court found that neither the parties nor the court found any Ohio court case applying the nominee doctrine. *Id.* at *66. This Court is at a similar loss for any such case, and having been provided none by the parties, finds that Ohio law does not recognize nominee theory. Accordingly, the United States cannot proceed with foreclosure on the tax liens based on nominee theory alone.

*Id.* at 883-85 (footnotes omitted).

*Toler*'s rationale directly informs the extant issue. If Edwards is indeed an equitable owner, and the undisputed facts suggest only that he is, then the instant case does not present a scenario akin to a nominee situation as Plaintiff suggests. I.S.M.B.A. is not attempting to conceal Edwards as an equitable owner. Rather, although the company acted to "save" him and did so in a manner that benefits Edwards greatly, I.S.M.B.A. is also holding the note and mortgage as security for a payment *that it intends to realize* upon the eventual sale of the Headley Road property.

I.S.M.B.A. President Hanief Edwards testified at his deposition that he was not concerned about the lack of mortgage payments because I.S.M.B.A. would get its money upon the eventual sale of the property. (ECF No. 59, at Page ID # 664, 667-68, 670.) He indicated that I.S.M.B.A. participated as a creditor in Edwards' unsuccessful bankruptcy proceedings to represents it interest, although he was unclear as to the details. (*Id.* at Page ID # 666-67.) And he indicated that, when contemplating a sale in 1996, he looked at the real estate market and concluded it was not a good time to sell the property. (*Id.* at Page ID # 671.) This last point is not immaterial in light of Hanief Edwards' view of the transaction with the bank—that he "was ahead several hundred thousand dollars in terms of the value of the property" on the deal. (*Id.* at Page ID # 663.) In other words, Hanief Edwards testified that I.S.M.B.A. made an investment

that was secured by property that was considerably more than the amount paid, that I.S.M.B.A. acted to protect that investment, that he considered how to realize on that investment in the marketplace, and that I.S.M.B.A. intends to realize that investment in the future.  There is no testimony or any other actual evidence whatsoever that such an eventual recoupment is not intended or will not be realized, which punctures Plaintiff's theory that the transaction constitutes a gift.

Although the factual scenario here might at first blush appear to present a sham, it is not the law's purview to dispute Hanief Edwards' good, bad, or indifferent business sense.  The law simply looks at the transactions and, if they are valid arrangements, sets the consequent property and tax implications accordingly.  I.S.M.B.A. therefore had an interest or right in the relevant property since 1992 when I.S.M.B.A. procured Edwards' note and mortgage.  All of the assessments involved in this case are subsequent to 1992.  This means that, absent another reason that would cause the company's interest to fail, I.S.M.B.A. takes priority over the interest established by Plaintiff's liens because federal tax liens arise at the time the assessments are made.  *See* 26 U.S.C. § 6322.

I.S.M.B.A. does not prevail, however, because another reason exists to defeat its interest.  Plaintiff argues that even if I.S.M.B.A. indeed has an interest, the statute of limitations bars enforcement of that interest here.  To support this argument, Plaintiff directs this Court to Ohio Revised Code § 2305.06, which provides an eight-year statute of limitations for actions based upon a contract.  Assuming *arguendo* that § 2305.06 applies to a claim based on the notes and mortgage involved here, the Court recognizes that Plaintiff is using the wrong statute of limitations period.

11

Prior to September 28, 2012, § 2305.06 provided for a fifteen-year statute of limitation. An amendment to the statute, which took effect on September 28, 2012, changed the limitations period to six years. Uncodified law set forth by Ohio's General Assembly then explained:

> For causes of action that are governed by section 2305.06 of the Revised Code and accrued prior to the effective date of this act, the period of limitations shall be eight years from the effective date of this act or the expiration of the period of limitation in effect prior to the effective date of this act, whichever occurs first.

2012 Ohio Laws File 135 (Sub. S.B. 224). Thus, under the former version of § 2305.06, a fifteen-year limitations period applied to any claims that began to run from the last payments Edwards made to I.S.M.B.A. sometime in 1995. The statute of limitations therefore expired sometime in 2010 and not in 2003 as Plaintiff contends.

Plaintiff curiously offers no supporting authority for the proposition that any version of § 2305.06 applies to the notes and mortgage here so as to effectuate a bar to assertion of the interest created by these documents. The state of the law in Ohio is perhaps unclear as to whether a statute of limitations bar to an action to collect on a promissory note secured by a mortgage automatically extinguishes the mortgagee's lienholder rights. 36 A.L.R. 6th 387 § 5. The most recent analysis of the issue from an Ohio court provides some guidance on disposition of the priority issue.

In *Barnets, Inc. v. Johnson*, No. CA2004-02-005, 2005 WL 406205 (Ohio Ct. App. Feb. 22, 2005), an Ohio court of appeals addressed whether former § 2305.06 applied to notes and mortgages and concluded that the statute did. The state court summarized Ohio law and, citing the limitations period in § 2305.06, explained that "when a debt that is secured by a mortgage is barred by the statute of limitations, the mortgage securing the debt is also barred." *Id.* at *3 (also

12

providing that a "foreclosure action cannot be maintained on mortgage after an action on note secured thereby is barred by the statute of limitations" (citing *Kerr v. Lydecker*, 51 Ohio St. 240, 255, 37 N.E. 267, 271 (1894))).  Thus, I.S.M.B.A. has no right of recovery or right to foreclose, even if it potentially retains a claim for ejectment.  *Id.* at *4; *see also Bradfield v. Hale*, 67 Ohio St. 316, 323-24, 65 N.E. 1008, 1010-11 (1902).  In the absence of a first priority lien held by I.S.M.B.A., Plaintiff is therefore entitled to foreclose on the Headley Road property and has first priority.[7]

### III. Conclusion

This Court **GRANTS** Plaintiff's motion for summary judgment (ECF No. 54), **DENIES** I.S.M.B.A.'s motion for partial summary judgment (ECF No. 56), and **DENIES** Edwards' motion for summary judgment (ECF No. 57).  The Court therefore reduces to judgment the federal income tax assessments for tax years 1998, 1999, 2008, and 2010 and orders foreclosure of the Headley Road property to satisfy the relevant liens.  In its briefing, Plaintiff offers to submit a proposed judgment entry, and it must do so on or before August 18, 2014.

The foregoing does not resolve all of the interests at issue in this case.  In a subsequent order, this Court will address Plaintiff's pending motion for default judgment against Defendants Huntington National Bank, Sterling Property Management, Inc., The Independent Savings Plan Company, Fth Corporation, and M. Farid Edwards, M.D., Inc. Pension Trust.  (ECF No. 77.) Additionally, both Defendant the State of Ohio and Defendant the Treasurer of Franklin County, Ohio have filed answers and remain involved in this case.  (ECF Nos. 16, 17.)  No party has

---

[7] In light of the fact that Plaintiff prevails on its priority and foreclosure claim, Plaintiff's argument that Edwards lacks standing to litigate the priorities of the liens involved in this action or I.S.M.B.A.'s interest in the Headley Road property is moot.

acted to enforce, dispose of, or obtain prioritization of their potential interests.  The Court therefore converts the scheduled August 20, 2014 final pretrial conference into a telephone status conference.[8]  In the event that all issues have not been resolved by that time, the Court will discuss these issues with the remaining parties.

    **IT IS SO ORDERED**.

          /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[8] The Court will provide the parties with call-in information via email.